IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NURSE NEXT DOOR HOME HEALTHCARE SERVICES (USA), INC., | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:18-cv-02101-PX |
| FOUR GLOVES, INC., *et al.*, | * | |
| Defendants. | * | |

***

**MEMORANDUM OPINION**

Pending before the Court are Plaintiff Nurse Next Door Home Healthcare Services (USA), Inc.'s two Motions for Default Judgment. ECF Nos. 10, 18. For the following reasons, Plaintiff's first Motion for Default Judgment (ECF No. 10) is DENIED as moot, and the second Motion for Default Judgment (ECF No. 18) is GRANTED IN PART and DENIED IN PART.

**I. Background**

Plaintiff Nurse Next Door Home Healthcare Services (USA), Inc. ("Nurse Next Door") is a Washington corporation, offering "franchise agreements to qualified franchisees who in turn provide comprehensive home medical services and supplemental healthcare staff to home care and institutional clients." ECF No. 1 ¶ 8. Nurse Next Door entered into a Franchise Agreement with Defendant Four Gloves, Inc. ("Four Gloves") on April 28, 2016, obligating Four Gloves "to operate a Nurse Next Door-branded home nursing and health care business . . . in and adjacent to Prince George's County." *Id.* ¶ 15. Defendant Kenneth Stokes signed the Agreement as the "authorized agent" for Four Gloves. *Id.* On the same day, Stokes also executed a guaranty agreement with Nurse Next Door for Four Gloves in which he insured performance under the Franchise Agreement. *Id.* ¶ 17; *see also* ECF No.1-1 at Schedule C.

The Franchise Agreement provided Four Gloves with Nurse Next Door's training, planning, and technology resources in exchange for an Initial Franchise fee ("initial fee"), a Technology Start-Up fee ("start-up fee"), and royalties. ECF No. 1 ¶¶ 18–19, 23. Shortly after Four Gloves paid the initial and start-up fees totaling $55,000, Nurse Next Door refunded the same amount as per a supplemental Franchise Disclosure Document. ECF No. 1 ¶ 21–22; ECF No. 1-2 at 9. The parties agreed that once Four Gloves opened its doors for business, Four Gloves would repay the same franchise fees to Nurse Next Door. ECF No. 1 ¶ 22.

The fees in question became due on September 30, 2016. *Id.* ¶ 25. However, Four Gloves never repaid the fees, and in November 2017, Nurse Next Door provided Four Gloves and Stokes written notice of the failure to pay. *Id.* ¶ 26. Four Gloves also missed scheduled royalty fee payments required under the Agreement. *Id.* ¶ 26; ECF No. 1-1 § 6(a)(i–ii). To the best of Plaintiff's knowledge, Four Gloves has yet to open and operate the Prince George's Franchise. ECF No. 1 ¶ 26.

Nurse Next Door initially filed suit in Washington State pursuant to the Franchise Agreement's forum selection clause. However, Defendants evaded service of process in Washington state,[1] leaving Nurse Next Door little option but to bring this case in this Court where the Defendants are domiciled. The Complaint asserts claims against Four Gloves for breach of contract and against Stokes for breach of his guaranty agreement. ECF No. 1. After a protracted service history in this Court, Defendants have failed to answer or otherwise respond to the Complaint.[2]

---

[1] Washington requires personal service of process for out of state defendants. Wash. Rev. Code § 4.28.100 (2011).

[2] Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, the Clerk of the Court entered default as to both Defendants on October 16, 2018. ECF No. 6. Stokes then sent a letter informing the Court he was never served (ECF No. 7), and the Court granted Stokes 21 days to answer or otherwise respond. ECF No. 8. On November 26, 2018, Nurse Next Door filed a Motion for Default Judgment against only Four Gloves. ECF No. 10. After Stokes missed two recorded conferences with the Court and again failed respond to the Complaint, Nurse Next

## II. Standard of Review

Rule 55 governs default judgments entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). Although courts maintain "a strong policy that cases be decided on the merits," *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), default judgment is appropriate when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

In deciding whether to grant default judgment, the Court takes as true the well-pleaded factual allegations of the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation — other than one relating to the amount of damages — is admitted if a responsive pleading is required and the allegation is not denied."). The Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in this context. *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). Accordingly, where a complaint avers bare legal conclusions or "naked assertion[s] devoid of further factual enhancement," the Court will not enter default judgment. *Russell v. Railey*, No. DKC 08-2468, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012) (quoting *Iqbal*, 556 U.S. at 678); *see, e.g., Balt. Line Handling Co.*, 771 F. Supp. 2d at 545 ("The record

---

Door filed a second Motion for Default Judgment against both Four Gloves and Stokes. ECF No. 18. Aside from filing the second Motion for Default Judgment against both Four Gloves and Stokes, the two Motions for Default Judgment are substantively identical. Accordingly, the Court denies as moot the first Motion for Default Judgment against Four Gloves (ECF No. 10) and considers the second Motion for Default Judgment against both Defendants on the merits. ECF No. 18.

lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

If the complaint pleads sufficient facts from which the court may find liability, the Court next turns to damages. *See Ryan*, 253 F.3d at 780–81. Damages are circumscribed by that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The damages request must be supported by evidence introduced either at a hearing or by affidavit or other records. *See id.*; *Lawbaugh,* 359 F. Supp. 2d at 422.

### III. Discussion

Nurse Next Door moves for default judgment against Four Gloves for breach of contract and against Stokes for breach of guaranty. ECF No. 18. "Federal courts sitting in diversity apply the law of the state in which the court is located, including the forum state's choice of law rules." *H & M Co. v. Tech. Heat Transfer Servs., Inc.*, No. TDC-14-1518, 2015 WL 1472000, at *2 (D. Md. Mar. 30, 2015) (citing *Colgan Air, Inc. v. Raytheon Aircraft Co.,* 507 F.3d 270, 275 (4th Cir. 2007)). In Maryland, courts typically respect contractual choice of law provisions. *See Cunningham v. Feinberg*, 107 A.3d 1194, 1204 (Md. 2015) (internal citations omitted). Pursuant to the choice of law provision in the parties' Franchise Agreement (ECF No. 1-1 § 19(h)), this Court applies the substantive law of Washington state.

#### A. Breach of Contract

To sustain its breach of contract claim, Nurse Next door must establish that (1) the parties entered into a contract; (2) Four Gloves breached the contract; and (3) damages. *See Wodja v. Wash. State Emps. Credit Union*, No. C15-5693 BHS, 2016 WL 3218832, at *2 (W.D. Wash. June 9, 2016). Taking the facts averred in the Complaint as true, each element is met. The Complaint avers that the parties entered into a binding Franchise Agreement which required Four

4

Gloves to pay the fees in question in exchange for Four Gloves' operating the Prince George's Nurse Next Door franchise for five years. *Id.* ¶¶ 18–19, 23. Further, Four Gloves materially breached the Franchise Agreement by failing to operate the franchise continuously during normal hours of business; failing to meet minimum sales requirement; failing to purchase insurance; and by evading service of process in Washington. *Id.* ¶¶ 40–44. Four Gloves also breached the Agreement by failing to pay the requisite royalty fees due September 30, 2016. ECF No. 1 ¶¶ 23, 25. As to damages, Four Gloves missed payments for the $55,000 fee as well as care services fees, ongoing technology fees, and projected royalties due and payable to Nurse Next Door under the terms of the Franchise Agreement. *Id.* Default judgment is thus proper as to Four Gloves on the breach of contract claim.

### B. Breach of Guaranty

Similarly, default judgment shall lie against Stokes. Stokes executed a personal guaranty agreement with Nurse Next Door on behalf of Four Gloves on April 28, 2016. ECF No. 1-1 at Schedule C. A guaranty agreement is a "promise on the part of one person which is collateral to a primary or principal obligation on the part of another, and which binds the obligator to performance in the event of any nonperformance by such other." *BP W. Coast Prods., LLC v. SKR, Inc.*, No. C11-6074 MJP, 2013 WL 5212040, at *4 (W.D. Wash. Sept. 17, 2013). Although the court interprets guaranty agreements under similar contract principles, a guaranty agreement "should not be given an unfair and strained interpretation to restrict or diminish the guarantor's obligation." *See Fujifilm Sonosite, Inc. v. The Imaging Specialists Grp., LLC*, No. 13-983 RSM, 2014 WL 2930976, at *6 (W.D. Wash. June 27, 2014) (quoting *Fancher Cattle Co. v. Cascade Packing*, 613 P.2d 178 (Wash. Ct. App. 1980)) (internal quotations omitted).

Under the guaranty agreement, Stokes personally promised "full and prompt payment and

5

performance when due, of all obligations of Franchisee to Company," including payments due under the Franchise Agreement. ECF No. 1-1 at Schedule C § 1.1. Accepting the pleaded facts as true, Stokes failed to make the guaranty payments to Nurse Next Door under the Franchise Agreement. ECF No. 1 ¶¶ 50, 52. Stokes further breached the guaranty agreement by evading service of process in Washington, thereby frustrating the choice of laws and venue provisions in the Franchise Agreement. ECF No. 1 ¶ 51; ECF No. 1-1 § 19(h). On these facts, the Court concludes that Stokes has breached the guaranty agreement and is jointly and severally liable for the amounts owed to Nurse Next Door under the Franchise Agreement.

### C. Damages

Nurse Next Door seeks damages arising from the breach of the pertinent agreements. The Court finds that Nurse Next Door has generated sufficient evidence to support an award of $136,250. *See Laborers' Dist. Council Pension v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at *3 (D. Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.") (affidavits and invoices supporting a damage claim are sufficient).

First with respect to unpaid fees and royalties pursuant to the Franchise Agreement, Nurse Next Door is entitled to that amount which "to the extent possible, put[s] the injured party in as good a position as that party would have been in had the contract been performed." *Brotherson v. Prof'l Basketball Club, L.L.C.*, 604 F. Supp. 2d 1276, 1292 (W.D. Wash. 2009) (quoting *Mason v. Mortgage America, Inc.*, 792 P.2d 142,146 (Wash. 1990) (en banc)). "[T]he measure of damages is the amount which would have been received if the contract had been kept, . . . including the profits and advantages which are its direct results." *Valve Corp. v. Sierra Entm't Inc.*, 431 F. Supp. 2d 1091, 1101–02 (W.D. Wash. 2004) (internal citations and quotations

omitted). The Franchise Agreement provided for payment of $55,000—the Initial Franchise Fee of $47,000 and the Technology Start-Up Fee of $8,000. ECF No. 1-1 §§ 3(a), 3(c)(vi). The Franchise Agreement supports this award. Defendants are jointly and severally liable to Nurse Next Door in the amount of $55,000. *See Id.* ¶ 25.

Next, under the Franchise Agreement, Nurse Next Door was owed royalty payments of either five percent of gross sales or $81,250 (which represents five percent of the gross minimum sale requirements), whichever is higher, for the duration of the five-year term. ECF No. 1-1 §§ 3(b), 6. Because Nurse Next Door is entitled to the amount it would have received "had the contract been kept," it is entitled to the full $81,250. *Valve Corp.*, 431 F. Supp. at 1101–02; *see also* ECF No. 1 ¶ 16; ECF No. 1-1 §§ 3(b), 3(c)(i)(1), 6.

The Agreement also required Four Gloves to pay to Nurse Next Door annually the greater of seven percent of gross sales (which at minimum gross sales requirements amounts to $89,250 over five years) or $300, plus any third-party licensing fees, and a monthly technology fee of $400. ECF No. 1-1 § 3(c)(i)(1–3). The Agreement, however, makes plain that such fees would be accrued in exchange for maintenance of Nurse Next Door's Care Services Center, which provides remote technology and client support services to all operational Nurse Next Door franchises. ECF No. 1-2 at 13. Four Gloves never opened or operated its franchise, and thus never used any of these services. ECF No. 1 at 26. Accordingly, Nurse Next Door is not entitled to these unearned fees. *Brotherson*, 604 F. Supp. 2d at 1292.

Nurse Next Door also asks the Court grant post-judgment interest. ECF No. 18-2 ¶ 9. "Interest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as

published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment." *Id.* Plaintiff's request for post-judgment interest is granted at the statutorily prescribed rate.

**D. Attorneys' Fees**

Nurse Next Door lastly seeks attorneys' fees under the Franchise Agreement. The Agreement states that "[i]n the event the Franchisor is made a party to any litigation commenced by or against the Franchisee . . . the Franchisee . . . shall pay all costs and expenses including reasonable legal fees, accountants and expert witness fees, costs of investigation and travel and living expenses incurred or paid . . . in connection with such litigation." ECF No. 1-1 § 19(b). The same obligations arise "if it is established that the Franchisee has breached any of the terms and conditions" of the Franchise Agreement. *Id.*

"In a diversity action, such as this one, a parties' right to recover attorneys' fees is ordinarily governed by state law." *Bistro of Kan. City, Mo., LLC v. Kan. City Live Block 125 Retail, LLC*, No. ELH-10-2726, 2013 WL 6198836, at *5 (D. Md. Nov. 26, 2013) (internal marks and citation omitted); *see also Rohn Prod. Int'l, LC v. Sofitel Capital Corp. USA*, No. WDQ-06-504, 2010 WL 3943747, at *4 (D. Md. Oct. 7, 2010) ("In a diversity case, absent a conflicting applicable federal rule of procedure, state law governs not only the actual award of attorneys' fees but also the method of determining those fees.").[3] In this case, the Franchise

---

[3] Although Maryland's choice-of-law rule allow this Court to accept the parties' provision as to the applicability of Washington state law to the substantive claims, "[i]t is not necessarily clear whether the state law that governs an award of attorneys' fees is the law of the forum state or . . . the law of another state that is applicable to the substantive issues." *Bistro of Kan. City, Mo., LLC*, 2013 WL 6198836, at *5 n.1 (quoting *Ferrell v. W. Bend Mut. Ins. Co.*, 393 F.3d 786, 796–97 (8th Cir. 2005)). However, Maryland courts have generally held that attorneys' fees are a substantive issue, especially when based on statutory or contract provisions. *See, e.g., Bakers Express, LLC v. Arrowpoint Capital Corp.*, No. ELH-10-2508, 2012 WL 4370265, at *31 (D. Md. Sept. 20, 2012) ("[A] claim for legal costs is a substantive claim in that it is based on a contract that provides for the recovery of fees as an element of damages . . . .") (internal marks and citation omitted); *Rishell v. Comput. Scis. Corp.*, 702 F. App'x 103, 104 n.* (4th Cir. 2017) ("[S]tate laws concerning the award of attorneys' fees are generally substantive laws."). The Court will, therefore, apply Washington state law.

Agreement provided for the recovery of attorneys' fees by the prevailing party in litigation. *See* ECF No. 1-1 § 19(b). The Franchise Agreement also specifies that Washington law governs disputes arising under the contract, and by statute, Washington state shifts fees in a breach of contract action to the prevailing party. *See* Wash. Rev. Code § 4.84.330. Washington state law, therefore, applies here.

The court must first ascertain the "number of hours reasonably expended" by "the reasonable hourly rate of compensation." *Bowers v. Transamerica Title Ins. Co*., 675 P.2d 193, 203 (Wash. 1983) (en banc). Plaintiff's attorneys have provided time entries detailing the number of hours worked and the attorneys' hourly billing rates, along with relevant costs, totaling $19,373.05. ECF No. 18-1 at 6, 70–76. However, Nurse Next Door has not submitted to the Court any information establishing the attorneys' hourly rates as reasonable. *See Bowers*, 675 P.2d at 203 ("The attorney's usual fee is not, however, conclusively a reasonable fee . . . ."). Nurse Next Door has also redacted the task descriptions associated with each time entry, hampering the Court's ability to determine the reasonableness of the number of hours expended. *Id.* ("This documentation need not be exhaustive or in minute detail, but must inform the court, in addition to the number of hours worked, of the type of work performed and the category of attorney who performed the work."). The Court grants Plaintiff's counsel fourteen (14) days from the date of this Order to supplement the record by way of filing a separate petition for reasonable attorneys' fees. *See* Loc. R. 109.2.b; App'x B.

## IV. Conclusion

Based on the foregoing, Plaintiff Nurse Next Door Home Healthcare Services (USA), Inc.'s Motion for Default Judgment (ECF No. 18) is GRANTED in part and DENIED in part. Plaintiff is entitled to unpaid fees of $55,000 and royalties of $81,250, totaling $136,250.

Plaintiff's counsel may petition the court for attorneys' fees and costs within fourteen (14) days. Plaintiff is granted post-judgment interest at the rate stipulated in 28 U.S.C. § 1961. A separate Order follows.

 6/26/2019  
Date

/S/  
Paula Xinis  
United States District Judge