IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| NURSE NEXT DOOR HOME HEALTHCARE SERVICES (USA), INC., | *<br>*<br>* |
| Plaintiff, | * |
| v. | *  Civil Action No. 8:18-cv-02101-PX |
| FOUR GLOVES, INC., *et al.*, | * |
| Defendants. | * |

\*\*\*

## **MEMORANDUM OPINION**

Pending before the Court is Plaintiff Nurse Next Door Home Healthcare Services (USA), Inc.'s ("NND's") Petition for Attorneys' Fees. ECF No. 21. The Court finds no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the Court grants NND's petition.

### I. Background

This contract dispute was resolved on the merits when the Court entered default judgment for NND on June 26, 2019. ECF No. 19. Although Defendants never seriously contested the merits of this case, service issues resulted in this matter taking a circuitous path to resolution.

Plaintiff, a corporation of the State of Washington with its principle place of business in Canada, entered into a franchise agreement with Defendants Kenneth Stokes and Four Gloves, Inc. ("Four Gloves"). ECF No. 1 ¶¶ 1, 7, 14. After Defendants evaded service in Washington state, NND brought suit in this Court alleging that Defendants failed to meet their contractual obligations under the agreement. *Id.* ¶¶ 6, 14. NND personally served Defendants on August 23, 2018, ECF Nos. 3, 4; ECF No. 5 ¶ 2, and then moved for clerk's entry of default after Defendants did not answer the Complaint or otherwise respond, *see* ECF No. 5.

The clerk entered default on October 1, 2018. ECF No. 6. On November 1, 2018,

however, the Court received a letter from Stokes asserting that he "was never served," ECF No. 7, and as a result, the Court granted Stokes 21 days to answer or otherwise respond to the Complaint, ECF No. 8. When Defendants failed again to respond, NND moved for default judgment. ECF No. 10. One week later, Stokes again sent a letter to the Court advising that his "answer" to the Complaint and NND's motion was "that [he] was never served," and asking the Court to "[p]lease not rule a default against me." ECF No. 11.

In response to Stokes' letter, the Court scheduled several telephone conferences. ECF Nos. 12, 13, 15. After Defendants did not appear for those conferences, the Court requested that NDD submit supplemental documentation demonstrating proof of service. ECF No. 15. In its second motion for clerk's entry of default, NND provided such proof. ECF Nos. 16, 16-1. When Defendants again did not respond, the Court permitted NND to move for default judgment. ECF No. 17.

NDD did so in short order. ECF No. 18. The Court granted NND's motion in part and entered judgment in its favor. ECF No. 19. However, the Court denied NDD's request for attorneys' fees because NND had submitted redacted documents in support of the request which impeded the Court's ability to determine the reasonableness of the fees. *Id.* at 8–9. NND now again petitions for attorneys' fees, this time providing unredacted documentation. ECF No. 21.

**II.     Analysis**

As the Court explained in its previous opinion, *id.* at 8–9 & n.3, Washington state law controls the award of award of attorneys' fees in this matter. The Court has already determined that NND is entitled to attorneys' fees under the franchise agreement, *id.* at 8–9, and awarded post judgment interest on any money judgment, *id.* at 7–8. Thus, all that remains to decide is the reasonableness of the requested fees and costs—$19,631.40 and $1,428.40 respectively.

Washington courts follow the lodestar method in determining the reasonableness of attorneys' fees. *Baker v. Fireman's Ins. Co.*, 5 Wash. App. 2d 604, 615 (2018); *see, e.g.*, *Scott Fetzer Co. v. Weeks*, 122 Wash. 2d 141, 149–50 (1993); *Dalsing v. Pierce Cty.*, 190 Wash. App. 251, 270 (2015). Under the lodestar approach, the Court determines the "number of hours that were reasonably expected in pursuing the litigation" and multiplies this figure by the "reasonable hourly rate." *Baker*, 5 Wash. App. 2d at 615. As to the reasonable hourly rate, an attorney's "established rate for billing clients . . . will likely be a reasonable rate." *Id.* Additionally, the Court "may consider the level of skill required by the litigation, time limitations imposed on the litigation, the amount of the potential recovery, the attorney's reputation, and the undesirability of the case." *Id.* "The lodestar may be adjusted, if appropriate to reflect either the contingent nature of the representation or the quality of the representation, provided those factors have not already been factored into the lodestar amount." *Perry v. Costco Wholesale, Inc.*, 123 Wash. App. 783, 808 (2004). Regarding the number of hours expended, the Court "must limit the lodestar to hours reasonably expended, and should therefore discount hours spent on unsuccessful claims, duplicated effort, or otherwise unproductive time." *Bowers v. Transamerica Title Ins. Co.*, 100 Wash. 2d 581, 597 (1983).

### A. Hourly Rate

NND asks the Court to award attorneys' fees for the services of Erin Webb, Katie Lane Chaverri, and David Tayman. ECF No. 21 at 6. Chaverri and Tayman are partners at Tayman, Lane, Chaverri, LLP. Their co-counsel, Webb was a Tayman, Lane, Chaverri partner until June 2019 when she left the firm and began solo practice. ECF No. 21 at 5–6. NND requests a fee of $396 per hour as to the work provided by Tayman, Lane, Chaverri and $425 as to Webb's firm. ECF No. 21-1 ¶ 10. The Court agrees that these rates are reasonable.

$396 per hour represents a 10% discount from than Tayman, Lane, Chaverri's usual hourly rate, and Webb's hourly rate is $425. *Id.* ¶ 11. Because these amounts are at or below the attorneys' established rates, they are presumptively reasonable under Washington state law. *Bowers*, 100 Wash. 2d at 597.

The remaining factors do not upset this presumption. Webb has been practicing law for 16 years in the areas of commercial litigation and contract disputes. ECF No. 21-1 ¶¶ 2, 6; ECF No. 27-2 at 2–4. Chaverri and Tayman are similarly experienced. ECF No. 27-1 ¶ 12; ECF Nos. 21-4, 21-5. Hourly rates between $396 and $425 are consistent with their professional backgrounds.[1] Accordingly, the Court finds that $396 per hour and $425 per hour are reasonable rates under the lodestar calculation.

### B. Hours Expended

As to the number of hours, NND has provided invoices showing that its attorneys (primarily Webb) billed for 48.9 hours of legal work.[2] *See* ECF No. 21-2. NND maintains that this is a reasonable sum in light of the unusual service of process issues and time spent to address Stokes' sporadic involvement in the case. The Court agrees that this total time expended is reasonable.

Consistent with the local rules, *see* Loc. R. App'x B, NND provided the following breakdown of hours in its petition for fees:

- 0.4 hours for "Case development, background investigation, and case administration";

---

[1] Although Washington state law applies, the Court also notes that these hourly rates fall into the presumptively reasonable ranges established by the Local Rules. *See* Loc. R. App'x B (listing a range of $275-$425 per hour for attorneys with 15 to 19 years of experience).

[2] The invoices reflect 51.1 hours of work. However, Nurse Next Door intentionally excluded 2.2 hours from its petition. ECF No. 21-1 ¶ 9.

4

- 21.9 hours for "pleadings (including service issues)";
- 21.9 hours for "motions practice";
- 1.2 hours for "attending court hearings";
- 0.9 hours for "ADR"; and
- 2.6 hours for "fee petition preparation."

ECF No. 21 at 4; 21-1 at 2. Several of NND's billing requests are modest and easily addressed: 0.4 hours for general case administration, investigation, and development, 1.2 hours for attending hearings, 0.9 hours for negotiations, and 2.6 hours preparing the fee petition are all well within the bounds of reason for a case that lasted approximately one year.

NND has requested 43.8 total hours, however, for "pleadings" and "motions practice," which merit closer attention. For the purpose of this analysis, the Court has categorized NND's motions and pleading hours as follows:

| Task | Hours Spent | Source |
|---|---|---|
| Complaint, ECF No. 1 | **12.3 hours** | ECF No. 21-3 at 3 (8.1 hours); ECF No. 21-3 at 5 (4.2 hours) |
| First Motion for Clerk's Entry of Default, ECF No. 5 | **1.3 hours** | ECF No. 21-3 at 9 (1.3 hours) |
| First Motion for Default Judgment, ECF No. 10 | **10.2 hours** | ECF No. 21-3 at 9 (4.2 hours); ECF No. 21-3 at 11 (6.0 hours) |
| Second Motion for Clerk's Entry of Default, ECF No. 16 | **5.6 hours** | ECF No. 21-3 at 11 (4.3 hours); ECF No. 21-3 at 14 (0.3 hours); ECF No. 21-3 at 16 (1.0 hour) |
| Second Motion for Default Judgment, ECF No. 18 | **3.9 hours** | ECF No. 21-3 at 16 (3.9 hours) |
| Reviewing Orders and Pleadings | **0.6 hours** | ECF No. 21-3 at 11 (0.2 hours); ECF No. 21-3 at 14 (0.2 hours); ECF No. 21-3 at 16 (0.2 hours) |

| | | |
|---|---|---|
| General Service Issues to Include Notices of Service, ECF Nos. 3, 4, 9. | **8.1 hours** | ECF No. 21-3 at 5 (2.2 hours); ECF No. 21-3 at 7 (2.2 hours); ECF No. 21-3 at 11 (3.7 hours) |

Based on the amount of time NND spent on each of these motions and pleadings-related tasks, the Court finds that NND's remaining requested hours are reasonable.[3]

### 1. The Complaint

NND spent a total of 12.3 hours on its Complaint, which was factually detailed and elucidated the terms of the parties' lengthy franchise agreement. ECF No. 1 ¶¶ 16–22, 28–31, 35, 40–45, 48–51. This pleading went beyond boilerplate and would have taken time and care. The Court therefore finds that 12.3 hours to draft and file the Complaint is reasonable.

### 2. First Motion for Clerk's Entry of Default

NND expended 1.3 hours on its first motion for entry of default. This motion was not detailed and should not have required great effort to draft. *See* ECF No. 5. Thus, the time expended is reasonable.

### 3. First Motion for Default Judgment

NND spent 10.2 hours drafting its first motion for default judgment. The body of this motion is short, and primarily lays out the desired relief. ECF No. 10 at 1–2. Attached to the motion, however, is a detailed affidavit signed by Vice President of Innovation, Kathy Nguyen, that meticulously details the factual basis for a judgment in NND's favor. ECF No. 10-1. This affidavit includes year-by-year calculations of damages based on specific provisions of the

---

[3] The Court's review from the above table accounts for 42.0 hours of NND's claimed pleading or motions-related work, revealing a difference of 1.8 hours from NND's total. This discrepancy, however, does not render these 1.8 hours unreasonable. It appears that NND categorized some generic invoice entries as either pleadings or motions-related. The invoices included several short, generic entries that merely reflect ongoing client contact or communication with others about the case. *See, e.g.*, ECF No. 21-3 at 11 ("Discuss strategy with K. Nguyen and P. Mathews" for 0.1 hour); *id.* at 16 ("Email client regarding status of K. Stokes matter" for 0.1 hour). Because the Court finds that these modest billings are reasonable, the 1.8 hours gap does not upset the Court's analysis.

franchise agreement and likely took considerable effort to draft. *See id.* The motion also includes an affidavit from Webb that lists the attorneys' fees and costs incurred by NND. ECF No. 10-2. Looking mostly to the Nguyen affidavit, the Court concludes that 10.2 hours is a reasonable amount of time to draft and review this pleading.

### 4. Second Motion for Clerk's Entry of Default

NND spent 5.6 hours on a second motion for clerk's entry of default. This pleading is considerably longer than the first motion for clerk's entry of default and includes a detailed rendition of the facts, legal argument concerning Stokes' evasion of service, and documentation of NND efforts to serve Defendants. ECF Nos. 16, 16-1. NND included this additional information because Court had order supplemental pleadings regarding proof of service. *See* ECF No. 15. The Court finds 5.6 hours is reasonable for the second motion for clerk's entry of default.

### 5. Second Motion for Default Judgment

NND requests 3.9 hours for drafting and filing the second motion for default judgment. Although this pleading is similar its predecessor, NND updated the damages sought to account for newly accrued interest and legal fees, ECF No. 18 at 1, and provided invoices for the latter, ECF No. 18-1 at 70–72. NND also modified the relevant factual summary to account for the ongoing efforts to serve Defendants and the associated costs. *Id.* Finally, NND supplemented the substantive facts in Nguyen's affidavit to reflect that Stokes had personally guaranteed payment under the franchise agreement. *Id.* at 5. Together, these changes render reasonable the time NND spent on the second motion for default judgment.

### 6. Reviewing Pleadings and Orders

NND expended a modest amount of time, only 0.6 hours, reviewing pleadings from

7

agreement provides that "if it is established that the Franchisee has breached any of the terms and conditions of this Agreement, the Franchisee hereby agrees t*o pay all costs and expenses, including legal fees*, that may be incurred or paid by the Franchisor in enforcing" the agreement. ECF No. 1-1 at 46 (emphasis added). NND's invoices reflect $1,000 in costs incurred to serve Defendants, a filing fee of $400, and $28.40 in postage that was used to mail pleadings to Stokes. The Court awards these costs pursuant to the franchise agreement.

### III. Conclusion

For the foregoing reasons, NND's Petition for Attorneys' Fees is granted. A separate order follows.

| | |
|---|---|
| 1/17/2020 | /s/ |
| Date | Paula Xinis |
| | United States District Judge |